AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
SEP 10 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                               DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.
)
Galaxy cellular phone )
IMEI: 352688-10-962865-7 )
(TARGET PHONE) )

**APPLICATION FOR A SEARCH WARRANT**    '19 MJ 3873

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated herein by reference).

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated herein by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952/960 | Importation of a Controlled Substance |

The application is based on these facts:
See Attached Affidavit of HSI SA Mark Jay.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Mark Jay, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/10/19

_____
*Judge's signature*

City and state: San Diego, California          Hon. Jill L. Burkhardt, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Mark Jay, Special Agent with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) being duly sworn, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by HSI Special Agents for the following target property: one cellular phone.

   (1) Samsung cellular phone, Model Galaxy S10+, with IMEI: 352688-10-962865-7, S/N: SM-G975U, and FCC ID: A3LSMG975U (the **Target Phone**)

2. The **Target Phone** was seized on August 19, 2019, from Jessica DELGADO, at the Otay Mesa Port of Entry (POE), San Diego, California when she entered the United States from Mexico. It is believed that the **Target Phone** was used by DELGADO to communicate with co-conspirators during a drug smuggling event on August 19, 2019. On that date, DELGADO was arrested after driving her vehicle that was found to have approximately 18.12 kilograms (39.95 pounds) of methamphetamine concealed within the rear quarter panels of the vehicle. The **Target Phone** is currently in the possession of the CBP office of Fines Penalties and Forfeitures (FP&F) located at 9777 Via De La Amistad, San Diego, CA, 92154. This is located within the Southern District of California.

3. Probable cause exists to believe that the **Target Phone** contains evidence relating to violations of Title 21, United States Code Sections 952/960 (Importation of a Controlled Substance).

4. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the items to be seized set forth in Attachment B will be found in the items to be searched as described in Attachment A. These items may be or lead to evidence of the violations described above.

1

## TRAINING AND EXPERIENCE

5. I have been a Special Agent with Homeland Security Investigations (HSI) since February 13, 2011. I have received law enforcement training at the Federal Law Enforcement Training Center (FLETC) in Glynco, GA and I am a graduate of the Criminal Investigator Training Program (CITP) and the Immigration and Customs Enforcement Special Agent Training (ICESAT) Academies at FLETC. Prior to working as a Special Agent I held the position of Immigration Officer with the United States Citizenship and Immigration Service (USCIS) from 2005 until 2011. I currently have a total combined federal service of almost 15 years. My federal law enforcement experience, combined with my ICESAT and CITP training, has given me the knowledge of how Drug Trafficking Organizations (DTOs) operate. In my current position with HSI, my duties include investigating the trafficking of federally controlled substances. I have worked as the case agent on many drug-related investigations. In the course of my drug-related investigations I have conducted surveillance on multiple occasions, observing and recording movements of individuals trafficking in drugs and of those suspected of trafficking in drugs. I have also initiated and executed arrests for drug-related offenses, including Possession with the Intent to Distribute and Importation of a Controlled Substance. Furthermore, I have interviewed defendants and witnesses relating to the illegal trafficking of controlled substances.

6. Through the course of my training, investigations, and conversations with cooperating individuals and other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment,

names, photographs, text messages, emails, instant messages, social networking messages, and phone numbers of co-conspirators.

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Furthermore, I have personal knowledge of the following facts or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in controlled substance smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, social networking sites, and voice messages.

   b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

f. Drug smugglers will use cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

9. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## FACTS SUPPORTING PROBABLE CAUSE

10. On or about August 19, 2019, at approximately 8:15 p.m., Jessica DELGADO, a United States citizen, applied for entry into the United States from Mexico through the Otay Mesa Port of Entry in vehicle lane #9. DELGADO was the driver and sole occupant of a black Nissan Sentra ("the vehicle") bearing California license plates. A Customs and Border Protection (CBP) Canine Enforcement Officer (CEO) was conducting pre-primary inspections in the area. When the vehicle passed by him his Human and Narcotic Detection Dog (NHDD) alerted to the trained odor of narcotics and chased the vehicle to the inspection booth. The NHDD continued to alert to the bottom of the vehicle. The CEO had the driver shut off the vehicle and then allowed the NHDD to climb into the back of the vehicle. The NHDD alerted to the

quarter panels. The CEO pulled back the material covering the quarter panels and saw packages wrapped in plastic.

11. The vehicle was then driven to the secondary inspection area where it was sent through the Z-Portal X-Ray machine. A CBP Officer operating the Z-Portal X-Ray machine detected anomalies in both of the rear quarter panels of the vehicle. Further inspection of the vehicle resulted in the discovery of 35 packages concealed in the rear quarter panels of the vehicle, with a total approximate weight of 18.12 kgs (39.95 lbs). A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

12. A CBP Officer placed DELGADO under arrest. At the time of arrest, DELGADO was in possession of the **Target Phone**, which the officer seized.

13. During a cursory scan of the target phone at the time of arrest, SA Jay identified a text communication between DELGADO and an individual named "Jessie" in her phone contact list. During the post-Miranda interview SA Jay asked DELGADO who Jessie was. DELGADO stated that he was a childhood friend. SA Jay told DELGADO that there was a text from Jessie asking DELGADO if she wanted to do the work for his uncle that they had talked about before. SA Jay asked what type of work that was. DELGADO stated that it was moving drugs but that she was not sure if it involved moving the drugs across the border. She stated that she never took him up on the job, and DELGADO denied knowledge of the narcotics in the vehicle.

14. DELGADO was arrested and referred for prosecution for Importation of a Controlled Substance in case 19-MJ-3515-BGS. DELGADO made her initial appearance on August 20, 2019. DELGADO remains in custody with the last court appearance being a Bond Modification Hearing which took place on September 5, 2019 during which DEGLADO's oral motion to modify conditions of release was granted.

DELGADO's bond was modified to $20,000 personal security secured by one financially responsible and related adult and a 10% cash deposit.

15. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of DELGADO and her co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like Facebook, pictures, location data, and other digital information are stored in the memory of the cellular telephone described herein.

## SEARCH METHODOLOGY

16. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all

of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

19. Based on all of the facts and circumstances described above, there is probable cause to conclude that DELGADO used the **Target Phone** to facilitate the offenses of importing distributing methamphetamine. The **Target Phone** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952 and 960.

20. Because the **Target Phone** was seized during the commission of the offense and has been stored in a secure location, there is probable cause to believe that evidence of illegal activity committed by DELGADO continues to exist on the **Target Phone**.

//

7

21. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B are likely to be found in the property to be searched described in Attachment A. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

MARK JAY
HSI Special Agent

Subscribed and sworn to before me this 10 day of September, 2019.

Hon. Jill L. Burkhardt
United States Magistrate Judge

8